1  J. SCOTT GERIEN, State Bar No. 184728
2  MEGAN FERRIGAN HEALY, State Bar No. 229177
   DICKENSON, PEATMAN & FOGARTY
3  809 Coombs Street
   Napa, California 94559
4  Telephone: (707) 252-7122
   Facsimile: (707) 255-6876
5
6  Attorneys for Plaintiff
   WINE SCOUT INTERNATIONAL
7
8              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
9                 SAN JOSE DIVISION
10
11 Wine Scout International,              CASE NO.  CV 08-00858 JF
12         Plaintiff,
13                                        MOTION FOR PRELIMINARY
                                          INJUNCTION; MEMORANDUM OF
14     vs.                                POINTS & AUTHORITIES
15                                        Date:    April 18, 2008
16 Garcia Family Vineyards, Inc.          Time:    9:00 a.m.
                                          Room:    3
17         Defendant.
18
19
20
21
22
23
24
25
26
27

DICKENSON, PEATMAN & FOGARTY
A Professional Law Corporation
DP&F

## TABLE OF CONTENTS

MOTION FOR PRELIMINARY INJUNCTION ..............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND...............................................................................1

   A.  Wine Scout's BOUNTY HUNTER Brand...............................................1

   B.  Garcia's Infringing Use of the BOUNTY HUNTER Mark ...........................4

III.  ARGUMENT........................................................................................................5

   A.  LEGAL STANDARD ...............................................................................5

   B.  WINE SCOUT IS LIKELY TO SUCCEED ON THE MERITS ...............6

     A.   Wine Scout's BOUNTY HUNTER Mark Is Valid And Protectable ..................6

     B.   Defendant's Unauthorized Use of an Identical Mark for Goods Identical to Those of Plaintiff and Related to Plaintiff's Services is Likely to Cause Confusion, Mistake and Deception ..................................................................7

       1.   The Parties' Marks Are Identical.........................................................7

       2.   The Products At Issue Are Identical and are Related to Plaintiff's Services....8

       3.   Wine Scout's BOUNTY HUNTER Mark is a Strong Mark Entitled to The Widest Scope of Protection ..................................................................10

       4.   The Goods and Services at Issue Utilize Similar Marketing Channels and Will be Targeted to Wine Consumers ..........................................................11

       5.    The Typical Wine Consumer Is Likely To Be Confused.................12

       6.   The Intent Factor Tips in Plaintiff's Favor .......................................13

       7.   The Actual Confusion Factor Does Not Tip The Balance In Either Direction ...................................................................................................14

       8.   Expansion of Product Lines is a Non-Factor ....................................14

       9.   A Weighing of the Sleekcraft Factors Demonstrates Likelihood of Confusion ...................................................................................................15

     C.   Irreparable Harm Is Presumed .........................................................15

     D.   The Balance of Hardships Also Favors Wine Scout ............................15

IV.  BOND....................................................................................................................16

V.   CONCLUSION ..................................................................................................16

DP&F

DICKENSON, PEATMAN & FOGARTY
A Professional Law Corporation

1

# TABLE OF AUTHORITIES

2

3 **Cases**

4 *American Intern. Group, Inc. v. American Intern. Bank*, 926 F.2d 829 (9th Cir. 1991) ...............8, 9

5 *Americana Trading Inc v. Russ Berrie & Co.*, 966 F.2d 1284 (9th Cir. 1992) .................................6

6 *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)...........................................7, 11,12, 14

*Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir. 1984) .....................................15

7 *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir.

8     1999) .......................................................................................................................................6, 7

9 *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988)..........................................5

*Charles Schwab & Co., Inc. v. Hibernia Bank*, 665 F.Supp. 800 (N.D.Cal. 1987)....................5, 11

10 *Dep Corp. v. Opti-Ray, Inc.*, 768 F.Supp. 710 (C.D.Cal. 1991).....................................................15

11 *Dreamwerks Production Group v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998)...........................7, 9

12 *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 457 (N.D.Cal. 1991).......8, 12, 14

13 *Golden Door, Inc. v. Odisho*, 646 F2d 347 (9th Cir. 1980)..............................................................10

*Golden West Financial v. WMA Mort. Services, Inc.*, 2003 WL 1343019 (N.D.Cal. 2003)............9

14 *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ......................................7, 10, 15

15 *Grey v. Campbell Soup Co.*, 650 F.Supp. 1166 (C.D.Cal.1986), *aff'd*, 830 F.2d 197 (9th Cir.

16     1987) ..........................................................................................................................................12

17 *Guess?, Inc. v. Tres Hermanos*, 993 F.Supp. 1277 (C.D.Cal.1997)................................................14

*In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988) ......................9

18 *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993)....................6, 15

19 *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2nd Cir.

20     1996) ....................................................................................................................................13, 14

21 *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1110 (9th Cir. 1999) ............11, 14

*Jayair Corp. v. Muka Industries, Inc.*, 33 USPQ2d 1304, 1994 WL 744642 (C.D.Cal. 1994)..9, 12

22 *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042 (9th Cir. 1988)...................6

23 *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857 (9th Cir. 2003) .....................................5

24 *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445 (9th Cir. 1988) .................10

25 *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601 (9th Cir. 1987)......................................10

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993).................................................10

26 *In re Opus One Inc.*, 60 USPQ2d 1812 (TTAB 2001) .......................................................................8

27 *Palantir Technologies Inc. v. Palantir.net, Inc.*, 2008 WL 152339 (N.D.Cal. 2008) ......................9

*Palm Bay Imports, Inc. v. Veuve Clicquot*, 396 F.3d 1369 (Fed. Cir. 2005)...................................12

DPⓇF

DICKENSON, PEATMAN & FOGARTY
*A Professional Law Corporation*

*In re Phillips-Van Heusen Corp.*, 228 USPQ 949 (TTAB 1986) ........................................9

*Rodeo Collection, Inc. v. West Seventh*, 812 F.2d 1215 (9th Cir. 1987) .................10, 15

*Roe v. Anderson*, 134 F.3d 1400 (9th Cir. 1998) ...........................................................5

*Russell v. Caesar*, 62 USPQ2d 1125 (N.D.Cal. 2001) ..........................................8, 10, 12

*Seven Elephants Distributing Corp. v. Earthquake Sound Corp.*, 2007 WL 977391 (C.D.Cal. 2007) ....................................................................................................................8

*In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993)............................8

*Steelcase Inc. v. Steelcare Inc.*, 219 USPQ 433 (TTAB 1983) .......................................9

*Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2nd Cir. 1978) ...............12

*TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88 (2nd Cir. 2001) ........14

*In re U.S. Shoe Corp.*, 229 USPQ 707 (TTAB 1985)........................................................9

*Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir. 1988) ...............................................8


**Statutes**

15 U.S.C. §1057(b) ...........................................................................................................6

15 U.S.C. §1114(1) (Lanham Act §32(1)) ......................................................................6, 7

15 U.S.C. §1125(a) (Lanham Act §43(a)) ......................................................................6, 7

27 C.F.R. §4.50 .................................................................................................................4

Cal. Bus. & Prof. Code §23358 ......................................................................................11


**Treatises**

4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (2003), §3:3, §11:11.........6, 15

J. Thomas McCarthy, *Trademarks and Unfair Competition*, §23:3 (2d ed. 1984) ..........................8


**Regulations**

*Trademark Manual of Examination Procedure* §812................................................................10

**MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65 and Civil Local Rule 65-2, Plaintiff, Wine Scout International, doing business as Bounty Hunter (hereinafter "Wine Scout" or "Plaintiff") hereby moves this Court for preliminary injunctive relief against Defendant, Garcia Family Vineyards, Inc., doing business as Bounty Hunter Wines (hereinafter "Garcia" or "Defendant") to enjoin Defendant and its producers or distributors from producing, selling, offering for sale, advertising or shipping any wine using the mark BOUNTY HUNTER pending trial in this matter.

This motion is based on Wine Scout's Complaint, this Motion and Memorandum and the attached declarations of Mark Pope and J. Scott Gerien. A Proposed Order is also submitted herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This case of trademark infringement involves the use of the identical mark on competitive goods and services, the type of case which has been characterized as "open and shut" by Professor McCarthy in his well-known treatise on trademark law. However, rather than accept this reality, Defendant has taken the unreasonable and unsupportable position that it is entitled to use the mark BOUNTY HUNTER on wine because Defendant's principals are also the owners of a bail bonds business and are themselves "bounty hunters." This position has no support in either the facts or the law. Plaintiff is the rightful owner of the BOUNTY HUNTER mark within the wine industry and the requested preliminary injunction against Defendant and its principals, who happen to be in the bail bonds business, must issue to protect Plaintiff's valuable trademark rights.

## II.   FACTUAL BACKGROUND

### A.   Wine Scout's BOUNTY HUNTER Brand

In 1994, Mark Pope, Plaintiff's founder, began doing business under the trade name Bounty Hunter, and founded BOUNTY HUNTER, a mail order catalog for wine. Declaration of Mark Pope in Support of Motion for Preliminary Injunction ("Pope Decl."), ¶2. Shortly

DP&F
DICKENSON, PEATMAN & FOGARTY
A Professional Law Corporation

1    thereafter, Plaintiff also began the limited retail store sale of wine under the BOUNTY HUNTER

2    mark. Pope Decl., ¶6. In 1998, Bounty Hunter debuted its BOUNTY HUNTER e-commerce

3    web site featuring the sale of wine and in 2003 Plaintiff opened the BOUNTY HUNTER wine bar

4    and restaurant in Napa, California in combination with a new retail wine store. Pope Decl., ¶¶5,

5    6. Plaintiff is the owner of an incontestable federal service mark registration for BOUNTY

6    HUNTER for its mail order catalog and retail store services featuring wine (Reg. No. 2,311,360).

7    Declaration of J. Scott Gerien in support of Motion for Preliminary Injunction ("Gerien Decl."),

8    ¶2.

9          In 2007, over 2 million BOUNTY HUNTER wine catalogs were mailed, the BOUNTY

10    HUNTER e-commerce web site had over 90,000 hits and $1.2 million in sales and BOUNTY

11    HUNTER had total sales of wine in excess of 190,000 bottles and total dollar sales in excess of

12    $15 million. Pope Decl., ¶¶2, 5. Between 2003 and 2007, Plaintiff mailed in excess of 7.8

13    million BOUNTY HUNTER wine catalogs and had wine sales in excess of $65 million based on

14    the sale of over 1.2 million bottles of wine. Pope Decl., ¶¶2, 4. Plaintiff's mailing list for its

15    BOUNTY HUNTER wine catalog is in excess of 5 million people, the catalog has been mailed to

16    consumers in all 50 states and wine purchased has been shipped to every state which permits the

17    shipment of wine from California. Pope Decl., ¶4.

18          Plaintiff taste-tests over 5,000 wines per year and specially selects approximately 200

19    different wines to feature in each of its BOUNTY HUNTER catalogs. Pope Decl., ¶3. Every

20    bottle of the over one million bottles of wine sold by Plaintiff in the last five years has carried a

21    special BOUNTY HUNTER sticker which functions to notify consumers that the wine possesses

22    a certain degree of excellence as found by Plaintiff. Pope Decl., ¶8. Plaintiff also sells gift sets

23    of wine that represent special collections of superior quality. Pope Decl., ¶9. These gift sets are

24    packaged in specially-marked wood crates and cardboard boxes that carry the BOUNTY

25    HUNTER trademark to symbolize the quality of the wine to consumers. Pope Decl., ¶9. Plaintiff

26    has used these special BOUNTY HUNTER labels and boxes for its wine since 1999. Pope Decl.,

27    ¶9.

1    In 1999, Plaintiff began pursuing a strategy of purchasing bulk wine to bottle for sale

2    through its catalog and in 2003 released its first privately labeled wine for sale. Pope Decl., ¶10.

3    Over the years, Plaintiff has produced and sold over 5,000 twelve-bottle cases (over 60,000

4    bottles) of private-label wine and has plans to reach production of 10,000 cases annually. Pope

5    Decl., ¶10. In 2007, Plaintiff released its JUSTICE series of Napa Valley Cabernets, and even

6    though the wine does not carry the wine brand name BOUNTY HUNTER, the BOUNTY

7    HUNTER Internet domain name appears on the label, and the association of the wine with

8    Plaintiff's BOUNTY HUNTER brand is evidenced by a November 2007 article in *Wine Spectator*

9    magazine entitled "20 to Watch, Exciting New Cabernet Labels" which identifies Plaintiff

10    "Bounty Hunter" for its JUSTICE series wines. Pope Decl., ¶¶10, 11, Exh. 22. *Wine Spectator*

11    reviews of the JUSTICE wines in October of 2007 also identify the producer as "Bounty Hunter."

12    Pope Decl., ¶11, Exh. 12.

13    Plaintiff also operates a wine bar and restaurant under the BOUNTY HUNTER mark at

14    the same location as its BOUNTY HUNTER retail wine store. Pope Decl., ¶6. The BOUNTY

15    HUNTER restaurant opened in 2003 and is estimated to have served over 100,000 people since

16    opening with dollar sales at the restaurant and retail location in excess of $6 million since 2003.

17    Pope Decl., ¶6. The restaurant was opened to compliment Plaintiff's wine business as wine is

18    always better enjoyed with food. Pope Decl., ¶6. The restaurant has been a tremendous success

19    and has been recognized by the *San Francisco Chronicle* as one of the top restaurants in the Bay

20    Area. Pope Decl., ¶16. Plaintiff's BOUNTY HUNTER mark reflects a combination of all of

21    these wine-related goods and services – wine production, wine catalog sales, retail wine store

22    sales and bar and restaurant services – into one overarching wine industry brand. Pope Decl.,

23    ¶10.

24    Plaintiff's BOUNTY HUNTER brand has been featured in stories in numerous media

25    outlets including *The Wall Street Journal, The New York Times, The Washington Times, The*

26    *Chicago Sun-Times, The San Francisco Chronicle, The Los Angeles Times, Pittsburgh Post*

27    *Gazette, Seattle Times, The Press Democrat, Bohemian, Wine & Spirits, Wine Spectator, Food &*

DICKENSON, PEATMAN & FOGARTY
*A Professional Law Corporation*
DP&F

1  *Wine, The Wine Enthusiast,, Money, Forbes, Playboy, Sunset, 7 x 7, Bloomberg Markets, CNN,*

2  *The Today Show, The Calgary Sun,* and *The International Herald Tribune.* Pope Decl., ¶15.

3  ## B.  Garcia's Infringing Use of the BOUNTY HUNTER Mark

4  On October 3, 2007, the U.S. Department of Treasury Alcohol and Tobacco Tax and

5  Trade Bureau ("TTB") issued a Certificate of Label Approval ("COLA") to Pisoni Vineyards of

6  Santa Rosa, California, doing business as Garcia Family Vineyards, for a wine with the brand

7  name BOUNTY HUNTER.[1]  Gerien Decl. ¶3, Exh. 3.  On or about October 26, 2007, Plaintiff

8  learned of this COLA and on October 29, 2007, sent a demand letter to Pisoni Vineyards putting

9  it on notice of Plaintiff's trademark rights and requesting that Pisoni not produce the wine.

10  Gerien Decl. ¶4, Exh. 4.  On November 1, 2007, Pisoni advised Plaintiff that Defendant, Garcia

11  Family Vineyards, had contracted with Pisoni to produce the BOUNTY HUNTER wine on

12  Garcia's behalf and that the COLA had been obtained by Pisoni on behalf of Defendant.  Gerien

13  Decl. ¶5, Exh. 5.  In a subsequent conversation with Mr. Pisoni, he advised Plaintiff that he would

14  not produce the BOUNTY HUNTER wine for Garcia until any differences with Wine Scout had

15  been resolved.  Pope Decl. ¶17.

16  On November 2, 2007, Plaintiff sent Defendant a demand letter demanding that it not

17  initiate use of the BOUNTY HUNTER mark on wine.  Gerien Decl. ¶6, Exh. 6.  On November 2,

18  2007, Defendant responded with a letter indicating that it intended to proceed with use and would

19  not comply with Plaintiff's demand not to use the BOUNTY HUNTER mark on wine.  Gerien

20  Decl. ¶7, Exh. 7.  On or about November 13, 2007, Plaintiff's CEO, Mark Pope, contacted

21  Defendant's principal owner, Mark Garcia, and expressed his objection to Defendant's planned

22  use of BOUNTY HUNTER.  Pope Decl. ¶18.  At the end of the call, Mr. Pope had the impression

23  that Mr. Garcia would reconsider his planned infringing use of BOUNTY HUNTER.  Pope Decl.

24  ¶18.

25  Plaintiff continued to monitor Defendant's activities, and on February 5, 2008, learned

26  that on January 10, 2008, Defendant had submitted an application for a Type-02 Winegrower

27

[1]  Pursuant to 27 C.F. R. §4.50, no domestically produced wine can be released from the bottling plant for sale or other use until a COLA is obtained from the TTB.

MOTION FOR PRELIMINARY INJUNCTION          4
CASE NO. CV 08-00858 JF

1   License to the California Department of Alcoholic Beverage Control under the dba Bounty

2   Hunter Wines. Gerien Decl. ¶9, Exh. 10. A review of the Internet also indicated that Defendant

3   has an active web site located at the domain name www.bountyhunterwinery.com advertising its

4   BOUNTY HUNTER brand with a copyright notice dated 2008. Gerien Decl. ¶9, Exh. 11.

5       This indicated to Plaintiff that Defendant was, and is, still actively advertising its planned

6   use of BOUNTY HUNTER and intended, and intends to proceed with use of the BOUNTY

7   HUNTER mark on wine, so Plaintiff proceeded to prepare a complaint and filed such complaint

8   on February 8, 2008. Gerien Decl. ¶10. In a final attempt to try and resolve the matter without

9   burdening the Court with a motion for preliminary injunction, Mr. Pope contacted Mr. Garcia

10   prior to this filing to again seek Mr. Garcia's assurance that Defendant would not use the

11   BOUNTY HUNTER mark. Pope Decl. ¶19. However, Mr. Garcia indicated to Mr. Pope that

12   Defendant did not intend to cease and desist its course of action, and instead wanted to "work

13   something out" with the Plaintiff so Defendant could continue use of the mark. Pope Decl. ¶19.

14   Plaintiff advised Defendant that this would not be possible. Pope Decl. ¶19. Accordingly,

15   Plaintiff proceeded to secure the hearing date for this motion. Gerien Decl., ¶11.

16   **III.    ARGUMENT**

17       **A.    LEGAL STANDARD**

18       Because there is no adequate legal remedy at law for damage caused by trademark

19   infringement, injunctive relief is the only option to prevent irreparable injury to a trademark

20   owner. *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180 (9th Cir. 1988). "A

21   preliminary injunction is an appropriate remedy for infringement of a registered trademark."

22   *Charles Schwab & Co., Inc. v. Hibernia Bank,* 665 F.Supp. 800, 803 (N.D. Cal. 1987).

23       A party seeking a preliminary injunction must show either: (1) a likelihood of success on

24   the merits and the possibility of irreparable injury; or (2) the existence of serious questions going

25   to the merits and the balance of hardships tipping in the movant's favor. *Mattel, Inc. v. Greiner*

26   *and Hausser GmbH,* 354 F.3d 857, 869 (9th Cir. 2003). These formulations represent two points

27   on a sliding scale in which the required degree of irreparable harm increases as the probability of

    success decreases. *Roe v. Anderson,* 134 F.3d 1400, 1402 (9th Cir. 1998). A showing of likely

1  success on the merits gives rise to a presumption of irreparable harm in trademark cases.

2  *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993).

3  **B.    WINE SCOUT IS LIKELY TO SUCCEED ON THE MERITS**

4       To prevail on a trademark infringement action, Bounty Hunter must establish that it has a

5  valid, protectable mark and that Defendant's use of a similar mark is likely to cause confusion,

6  mistake, or deception.  15 U.S.C. §1114(1) (Lanham Act §32(1)); 15 U.S.C. §1125(a) (Lanham

7  Act §43(a)); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036,

8  1046 (9th Cir. 1999).

9       **A.    Wine Scout's BOUNTY HUNTER Mark Is Valid And Protectable**

10       Wine Scout's BOUNTY HUNTER mark is an inherently distinctive,[2] federally registered

11  mark.  Gerien Decl. ¶2.  A certificate of federal registration of a trademark is "prima facie

12  evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's

13  exclusive right to use the mark in commerce."  15 U.S.C. §1057(b).  As a registered trademark,

14  the BOUNTY HUNTER mark is "presumed to be distinctive and should be afforded the utmost

15  protection."  *Americana Trading Inc v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992)

16  (citations omitted).

17       Wine Scout's BOUNTY HUNTER mark is inherently distinctive because it is arbitrary.

18  An arbitrary mark is one that contains a common word or words, but is neither suggestive nor

19  descriptive of the goods or services.  4 J. McCarthy, *McCarthy on Trademarks and Unfair*

20  *Competition* (2003), §11:11.  It cannot be said that a "BOUNTY HUNTER" is in any way related

21  to wine, the retail sale of wine or restaurant services.  *See, Id.*  (APPLE is an arbitrary brand for

22  computers because "apples" have nothing to do with computers).  Thus, Wine Scout's BOUNTY

23  HUNTER mark is inherently distinctive, valid and protectable as used in relation to wine, the

24  retail sale of wine, and restaurant services.

25  //

26  //

27

---

[2]    *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1988) (discusses the
degrees of distinctiveness and protectability of a mark).

DP&F

DICKENSON, PEATMAN & FOGARTY
*A Professional Law Corporation*

**B.    Defendant's Unauthorized Use of an Identical Mark for Goods Identical to Those of Plaintiff and Related to Plaintiff's Services is Likely to Cause Confusion, Mistake and Deception**

The central factor in determining liability in a trademark infringement action is whether the Defendant's use of its trademark is likely to cause confusion. 15 U.S.C. §1114(1) (Lanham Act §32(1)); 15 U.S.C. §1125(a) (Lanham Act §43(a)); *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000). Thus, at the preliminary injunction stage, Plaintiff must establish that it is "likely to be able to show . . . a likelihood of confusion" between the marks BOUNTY HUNTER and BOUNTY HUNTER. *GoTo.com,* 202 F.3d at 1205 (quoting *Brookfield Communications,* 174 F.3d at 1052, fn. 15). The Ninth Circuit has established an eight-factor test to determine likelihood of confusion. The factors are as follows:

1. Similarity of the marks;
2. Relatedness or proximity of the goods or services;
3. Strength of the mark;
4. Marketing channels used;
5. Degree of care likely to be exercised by purchaser;
6. Defendant's intent in selecting the mark;
7. Evidence of actual confusion; and,
8. Likelihood of expansion of the product line.

*AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979).

Analysis of the facts of this case under the eight factor *Sleekcraft* test leads to the clear conclusion that Defendant's use of BOUNTY HUNTER on wine is likely to cause confusion with Wine Scout's BOUNTY HUNTER brand resulting in irreparable harm to Wine Scout. Thus, the requested preliminary injunctive relief should be granted.

**1.    The Parties' Marks Are Identical**

The first factor, the degree to which the marks are similar, "has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com,* 202 F.3d at 1205. "[S]imilarity is adjudged in terms of appearance, sound, and meaning." *Id.* at 1206 (*citing Dreamwerks Production Group v. SKG Studio,* 142 F.3d 1127, 1131 (9th Cir. 1998)). The marks at issue in this matter, BOUNTY HUNTER v. BOUNTY HUNTER, are identical in appearance, sound and meaning. "Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not

DICKENSON, PEATMAN & FOGARTY
*A Professional Law Corporation*

1   involve protracted litigation to determine liability for trademark infringement." *Wynn Oil Co. v.*

2   *Thomas,* 839 F.2d 1183, 1191 (6th Cir. 1988) (*quoting* J. Thomas McCarthy, *Trademarks and*

3   *Unfair Competition,* §23:3 (2d ed. 1984)).  As the marks at issue are identical, this factor weighs

4   heavily in favor of Plaintiff.[3]

### 2.    The Products At Issue Are Identical and are Related to Plaintiff's Services

6   As the Ninth Circuit has previously instructed, if products or services are "sufficiently

7   'complementary' or 'related,'" then "the public is likely to be confused as to the source of the

8   services." *American Intern. Group, Inc. v. American Intern. Bank,* 926 F.2d 829, 832 (9th Cir.

9   1991).  Where the junior user's mark is identical to the senior user's mark, there need be only a

10  viable relationship between the respective goods and/or services in order to find that a likelihood

11  of confusion exists.  *In re Opus One Inc.,* 60 USPQ2d 1812, 1815 (TTAB 2001) (wine vs.

12  restaurants); *see In re Shell Oil Co.,* 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993) (auto parts

13  distribution services vs. oil change services).

14  In a Section 2(d) analysis, when the parties' goods are identical this "strongly indicates a

15  risk of confusion." *Seven Elephants Distributing Corp. v. Earthquake Sound Corp.,* 2007 WL

16  977391, *4 (C.D.Cal. 2007).  The goods at issue are identical as wines of all types constitute a

17  single class of goods. *See E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F.Supp. 457,

18  464 (N.D.Cal. 1991).  Furthermore, Wine Scout's BOUNTY HUNTER mark appears on 750-ml

19  bottles of Cabernet Sauvignon wines from California and Defendant's COLA indicates that its

20  BOUNTY HUNTER mark is also for use on 750-ml bottles of California Cabernet Sauvignon

21  wine. Pope Decl., ¶17; Gerien Decl., ¶3, Exh. 3.  Thus, this overlap of packaging size, grape

22  varietal, and geographic origin of the wine merely heightens the similarity of the goods and

23  increases the likelihood of confusion. *Russell v. Caesar,* 62 USPQ2d 1125, 1128-29 (N.D.Cal.

24  2001).

25  There is also a very high degree of overlap between wine, on the one hand, and the sale of

26  wine via a retail store, an internet website, a mail order catalog, and a wine bar and restaurant, on

27

---

[3]   Exacerbating the similarity between the marks and the likelihood of confusion is the fact that both Plaintiff and Defendant use the BOUNTY HUNTER mark in association with an "Old Western" theme.  Pope Dec., ¶12, Exhs. 13-16; Gerien Decl., ¶3, Exh. 3.

DICKENSON, PEATMAN & FOGARTY
A Professional Law Corporation
DP&F

1  the other. When one party manufactures the same goods that the other distributes, "the products

2  and services are substantially the same. Under such circumstances, there is a very high likelihood

3  of confusion." *Jayair Corp. v. Muka Industries, Inc.*, 33 USPQ2d 1304, 1994 WL 744642, *3

4  (C.D.Cal. 1994); *see Golden West Financial v. WMA Mort. Services, Inc.*, 2003 WL 1343019, *3

5  (N.D.Cal. 2003) ("Complementary products or services are particularly vulnerable to

6  confusion.").[4]  Thus, confusion is also likely based on the relatedness of wine and the sale of

7  wine.

8         The BOUNTY HUNTER mark functions as an overarching brand for Plaintiff that is

9  associated with wine and the sale of wine, symbolizing Plaintiff within the wine industry. Pope

10  Decl., ¶10. In finding "relatedness" under this prong of the *Sleekcraft* test, the Ninth Circuit only

11  requires that the use of the mark occurs within the same general industry. *See, e.g., Dreamwerks*

12  *Prod. Group, Inc.*, 142 F.3d at 1131 (finding relatedness where both parties offered products and

13  services relating to the entertainment industry generally); *American Intern. Group, Inc.*, 926 F.2d

14  at 832-33 (finding a potential for consumer confusion where the parties both provided "financial

15  services"). The focus is on whether the goods and services relate to the same industry such that

16  the consuming public is likely to associate one party's goods with the other's services or vice

17  versa. *Palantir Technologies Inc. v. Palantir.net, Inc.*, 2008 WL 152339, *5-6 (N.D.Cal. 2008).

18  Here, the goods and services at issue are both directly tied to the wine industry, and therefore are

19  related for purposes of determining likelihood of confusion.[5]  Thus, this factor tips decidedly in

20  favor of Wine Scout.

21

22  [4]     *See also In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988) (BIGG'S for retail grocery and general merchandise store services held confusingly similar to BIGGS for furniture); *In re U.S. Shoe Corp.*, 229 USPQ 707 (TTAB 1985) (CAREER IMAGE for retail women's clothing store services and clothing held

23  likely to be confused with CREST CAREER IMAGES for uniforms); *In re Phillips-Van Heusen Corp.*, 228 USPQ 949 (TTAB 1986) (21 CLUB for various items of men's, boys', girls' and women's clothing held likely to be

24  confused with THE "21" CLUB for restaurant services and towels); *Steelcase Inc. v. Steelcare Inc.*, 219 USPQ 433 (TTAB 1983) (STEELCARE INC. for refinishing of furniture, office furniture, and machinery held likely to be

25  confused with STEELCASE for office furniture and accessories).

26  [5]     Indeed, when Plaintiff learned of Defendant's proposed use, Plaintiff filed a trademark application for BOUNTY HUNTER for wine to better protect its common law rights and received an office action from the USPTO indicating

27  the application would conflict with Plaintiff's BOUNTY HUNTER registration for the retail sale of wine unless Plaintiff could also claim ownership in that registration, which it subsequently did. Gerien Decl. ¶8, Exhs. 8, 9. This further demonstrates the relatedness between wine and the sale of wine for purposes of determining likely consumer confusion. *See Trademark Manual of Examination Procedure* §812 (claim of ownership of prior registration on related goods or services necessary to demonstrate likelihood of confusion not an issue).

### 3.    Wine Scout's BOUNTY HUNTER Mark is a Strong Mark Entitled to The Widest Scope of Protection

The strength of a mark is defined as its tendency to identify a good with a particular source. *Rodeo Collection, Inc. v. West Seventh,* 812 F.2d 1215, 1218 (9th Cir. 1987). To determine the strength of a mark the Ninth Circuit applies an "imagination test" and a "need test." *Id.* Under this imagination/need test, arbitrary marks such as Wine Scout's are considered to be strong and worthy of broad protection:

> "The imagination test asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies. The product signified by an arbitrary mark requires great imagination. The more imagination required, the stronger the mark is. The "need test" approaches the problem from the opposite end. It asks to what extent a mark is actually needed by competitors to identify their goods or services . . . . As the amount of imagination needed increases, the need of the mark to describe the product decreases."

*Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1449 (9th Cir. 1988); *See also Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1392 (9th Cir. 1993) (*citing Nutri/System, Inc. v. Con-Stan Indus., Inc.,* 809 F.2d 601, 605 (9th Cir. 1987)) (arbitrary marks are strong marks).

Since the mark BOUNTY HUNTER is completely arbitrary, it would require a great deal of consumer imagination to associate the mark with wine or retail wine services. Furthermore, there is no justifiable need to use the mark BOUNTY HUNTER or equivalent marks for a winery to identify its wine. Conceptually, the mark BOUNTY HUNTER is an extremely strong mark.

It is also possible for a mark to acquire "commercial strength" through its use in commerce. *GoTo.com,* 202 F.3d at 1207. Extensive media coverage referencing a mark evidences that such mark is "commercially strong." *See Golden Door, Inc. v. Odisho,* 646 F.2d 347, 351 (9th Cir. 1980); *Russell v. Caesar,* 62 USPQ 2d at 1128 (media attention and critical acclaim for wine brand evidences strong mark). As previously indicated, Plaintiff's BOUNTY HUNTER brand has been featured in numerous local publications such as *The San Francisco Chronicle* and *The Los Angeles Times,* national publications such as *The New York Times, The New Yorker, Food & Wine, Playboy,* and *Sunset,* and on television on *The Today Show.* Pope Decl., ¶15, Exh. 20. These stories extensively discuss or highlight Plaintiff's BOUNTY HUNTER brand. Thus, the BOUNTY HUNTER mark is also commercially strong.

1    Accordingly, the strength-of-the-mark factor tips decidedly in Wine Scout's favor.

2    **4.    The Goods and Services at Issue Utilize Similar Marketing Channels and Will be Targeted to Wine Consumers**

3    Although it appears that Garcia has not yet produced wine under the brand name

4    BOUNTY HUNTER, it is actively advertising its Bounty Hunter Winery on its web site

5    (<bountyhunterwinery.com>) informing consumers: "In the near future we will feature are [sic]

6    wines and vineyard events." Gerien Decl., ¶9, Exh. 11. Wine Scout's BOUNTY HUNTER e-

7    commerce web site (<bountyhunterwine.com>) actively offers wine for sale with over $1.2

8    million in sales in 2007. Pope Decl., ¶5. Wine Scout also advertises its BOUNTY HUNTER e-

9    commerce web site for wine as a sponsored link on various Internet search engines such as

10   Google and Yahoo. Pope Decl., ¶13. Thus, the present marketing of the parties' respective

11   goods and services under the BOUNTY HUNTER mark clearly overlaps. *See Interstellar*

12   *Starship Services, Ltd. v. Epix, Inc.,* 184 F.3d 1107, 1110 (9th Cir. 1999) (active marketing of

13   goods and services over the Internet increases likelihood of confusion).

14   Additionally, the COLA obtained on behalf of Garcia demonstrates that the wine label is

15   typical of others used for the retail sale of wine and is intended for use on a 750-ml bottle, the

16   typical size bottle for use for the sale of wine at retail. Gerien Decl., ¶3, Exh. 3; Pope Decl. ¶17.

17   The "Type 02 Winegrower" license applied for by Garcia with the California Department of

18   Alcohol Beverage Control (*see* Gerien Decl., ¶9, Exh. 10) also evidences that Garcia's BOUNTY

19   HUNTER wine will be sold to retail consumers. Cal. Bus. & Prof. Code §23358 (licensed

20   winegrower may sell wine to consumers).

21   While the additional marketing channels for Garcia's wine are not known, this is not

22   entirely relevant to this analysis as it is clear that the general class of purchasers of the parties'

23   respective goods and services under the BOUNTY HUNTER mark – wine purchasers – will be

24   the same. Pope Decl., ¶2; *see AMF Inc.,* 599 F.2d at 353; *see also Charles Schwab & Co.,* 665

25   F.Supp. at 809-10.

26   Plaintiff's BOUNTY HUNTER mark has also been featured in advertising in the *Wine*

27   *Spectator*, as well as in articles in *Wine Enthusiast, Wines & Spirits, The Wine News* and *Food &*

*Wine* magazines and articles in local newspapers such as *The San Francisco Chronicle, The Press*

DP&F
DICKENSON, PEATMAN & FOGARTY
A Professional Law Corporation

1   *Democrat*, and many more. Pope Decl., ¶15. If Garcia's BOUNTY HUNTER brand is to have

2   any retail success it must be marketed for feature articles and reviews by critics in wine industry

3   publications and local newspapers that have featured Plaintiff's BOUNTY HUNTER brand. *See*

4   Gerien Decl., ¶13, Exh. 13 (trade publication article discussing the need for press and successful

5   reviews to successfully market a wine brand). This overlap in marketing channels that must be

6   used to sell the parties' respective products under the BOUNTY HUNTER mark also weighs in

7   favor of a finding of likelihood of confusion. *Jayair Corp.*, 1994 WL 744642 at *4.

8              **5.       The Typical Wine Consumer Is Likely To Be Confused**

9          The standard used to assess the likelihood of confusion to the public "is the typical buyer

10  exercising ordinary caution." *AMF, Inc.*, 599 F.2d at 353. Although this standard may exclude

11  the "wholly indifferent," it "includes the ignorant and the credulous." *Id.*

12         Confusion is more likely when the marks at issue are associated with "impulse" products.

13  *Gallo Nero*, 782 F.Supp. at 464-465 (*citing Grey v. Campbell Soup Co.*, 650 F.Supp. 1166, 1175

14  (C.D. Cal.1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987)). The Northern District has previously held

15  that wine is an "impulse" product. *Id.* (*quoting Taylor Wine Co. v. Bully Hill Vineyards, Inc.*,

16  569 F.2d 731, 733-34 (2nd Cir. 1978); *Russell v. Caesar*, 62 USPQ2d at 1130 (wines priced at

17  $14.99 are impulse products); *see also Palm Bay Imports, Inc. v. Veuve Clicquot*, 396 F.3d 1369,

18  1376 (Fed. Cir. 2005) ($25 Champagne not purchased with great deal of customer care).

19         Plaintiff's BOUNTY HUNTER wine bar/restaurant and retail store prides itself for

20  "taking the mystique out of wine" in a "down home" "relaxed setting" that appeals to everyone

21  from winemakers to tourists with little knowledge about wine. Pope Decl., ¶15, Exh. 20-12, 20-

22  15. Plaintiff, Wine Scout, sells wines through its BOUNTY HUNTER outlets starting at $10.95

23  per bottle and sells wine by-the-glass at its BOUNTY HUNTER restaurant starting at $5.00 per

24  glass. Pope Decl., ¶6. Defendant's COLA indicates that its planned wine is from the California

25  appellation. Gerien Decl., ¶3, Exh. 3. A study by the University of California Agricultural Issues

26  Center has shown that wines that carry the "California" appellation, on average, sell for $9.80 per

27  bottle. Gerien Decl., ¶12, Exh. 12.

DP&F

DICKENSON, PEATMAN & FOGARTY
*A Professional Law Corporation*

1    Clearly the wines at issue under the BOUNTY HUNTER marks would constitute impulse

2    purchases under the recognized case law. While inevitably the relevant consumers would include

3    some sophisticated purchasers, they would also include those with little knowledge about wine

4    who would be easily confused between the parties' respective goods and services under the

5    BOUNTY HUNTER mark. Accordingly, this factor suggests a likelihood of confusion favoring

6    injunctive relief.

7         **6.    The Intent Factor Tips in Plaintiff's Favor**

8    Discovery has yet to be conducted in this case. Thus, it is not possible to know

9    Defendant's actual intent in adopting the BOUNTY HUNTER mark for wine. However, in its

10   response to Wine Scout's demand letter, Garcia noted that it had "been successful in federal

11   trademark litigation in the past." Gerien Decl., ¶7, Exh. 7. Thus, based on its trademark

12   experience, Defendant should have known to conduct a basic trademark clearance search of all

13   federally registered marks prior to adopting its mark, wherein it would have discovered Plaintiff's

14   incontestable federal registration for BOUNTY HUNTER for catalog and retail store sales of

15   wine. *See* Gerien Decl., ¶2, Exh. 1. While Defendant has indicated that it researched registered

16   wine brands before adopting it mark, it does not appear that Defendant conducted any search for

17   related goods or services. *See* Gerien Decl., ¶2, Exh. 1.

18   As the Second Circuit observed in *International Star Class Yacht Racing Ass'n v. Tommy*

19   *Hilfiger USA, Inc.*, 80 F.3d 749 (2nd Cir. 1996), defendant's failure to conduct a broader

20   trademark search beyond a single class of goods on the federal trademark register demonstrated a

21   willful ignorance and bad faith intent by defendant. *Id.* at 753-54. Thus, having self-proclaimed

22   familiarity with the Lanham Act and trademark law, Garcia clearly acted in bad faith in not

23   conducting a simple trademark search that would disclose Wine Scout's federal registration or,

24   Garcia was aware of the registration and simply ignored it due to its interest in using the

25   BOUNTY HUNTER mark.

26   *Hilfiger* goes on to note that defendant's continued use of the infringing mark after the

27   lawsuit was filed further evidenced defendant's bad faith intent in clearly disregarding plaintiff's

trademark rights. *Id.* at 754. In this case, Wine Scout put Garcia on notice of its federally

DICKENSON, PEATMAN & FOGARTY
A Professional Law Corporation

DP&F

1    registered rights on multiple occasions, including prior to the filing of this motion. Gerien Decl.,

2    ¶6; Pope Decl., ¶¶18, 19. In each instance, Garcia indicated its intent to use the BOUNTY

3    HUNTER mark despite Plaintiff's rights, Garcia proceeded to use the BOUNTY HUNTER mark,

4    and in the last contact with Plaintiff, Garcia again indicated it would not stop using the BOUNTY

5    HUNTER mark. Gerien Decl., ¶7; Pope Decl., ¶19. All of this clearly demonstrates Defendant's

6    bad faith intent in use of the BOUNTY HUNTER mark.

7       "Adopting a designation with knowledge of its trademark status permits a presumption of

8    intent to deceive." *Interstellar Starship Services, Ltd.,* 184 F.3d at 1111. And, "[i]n turn, intent to

9    deceive is strong evidence of a likelihood of confusion." *Id.* Thus, Garcia's bad faith intent tips

10   this factor decidedly in Wine Scout's favor.

11       ### 7.    The Actual Confusion Factor Does Not Tip The Balance In Either Direction

12       Since evidence of actual confusion "is not dispositive" in finding a likelihood of confusion

13   (*AMF, Inc.,* 599 F.2d at 353), the "absence of actual confusion will not defeat an otherwise

14   successful claim of infringement." *Gallo Nero,* 782 F.Supp. at 465.

15       Beyond its web page located at <bountyhunterwinery.com>, Garcia has not yet made any

16   significant use of the BOUNTY HUNTER mark. As there has been little or no opportunity for

17   actual confusion to be manifested, the absence of actual confusion sheds no light on the

18   likelihood of confusion in this case. *TCPIP Holding Co., Inc. v. Haar Communications, Inc.,* 244

19   F.3d 88, 102 (2nd Cir. 2001). Thus, the absence of any known actual confusion weighs neither for

20   nor against a finding of likelihood of confusion.

21       ### 8.    Expansion of Product Lines is a Non-Factor

22       Where plaintiff and defendant are currently in the same business in the same geographical

23   area, the expansion of product line factor takes on little importance. *Guess?, Inc. v. Tres*

24   *Hermanos,* 993 F.Supp. 1277, 1284 (C.D.Cal. 1997). Since Wine Scout is using its BOUNTY

25   HUNTER name and mark in association with wine, retail wine sales, catalog sales of wine, and

26   restaurant services and Garcia has initiated use of the BOUNTY HUNTER name and mark in

27   association with a winery and wine brand, the parties are already in competition and this factor

does not impact the analysis.

### 9.    A Weighing of the Sleekcraft Factors Demonstrates Likelihood of Confusion

Six of the eight *Sleekcraft* factors suggest that there is a likelihood of confusion between the parties' marks. The remaining two factors are not relevant to this case, and therefore do not impact the analysis either way. Accordingly, in balancing the factors, Wine Scout has demonstrated a strong likelihood of success on the merits of the infringement claim.

### C.    Irreparable Harm Is Presumed

Once a trademark owner has shown a likelihood of success on the merits, the resultant loss of control over the trademark and the risk to the goodwill and reputation associated therewith constitutes irreparable injury warranting a preliminary injunction. *Dep Corp. v. Opti-Ray, Inc.*, 768 F.Supp. 710, 717 (C.D.Cal. 1991) (*citing Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 526 (9th Cir. 1984)).

The very purpose of a mark is to identify a product or service as emanating from a single source, allowing the public to rely on the mark for consistency and quality. *McCarthy*, §3:3. The loss of control of the mark removes the ability of the owner to guarantee the public such consistency and quality. The magnitude of this loss caused by the inability to control one's mark is thus impossible to assess. *Rodeo Collection*, 812 F.2d at 1220.

Wine Scout's demonstrated probable success on the merits creates a presumption that Defendant's conduct will result in irreparable injury to the Wine Scout. *Int'l Jensen*, 4 F.3d at 827. The loss of control over Wine Scout's reputation and the loss of goodwill associated with its distinctive BOUNTY HUNTER mark cannot be compensated by money. A preliminary injunction is imperative to the protection of Wine Scout's mark and the success of its business.

### D.    The Balance of Hardships Also Favors Wine Scout

Wine Scout's demonstration of likelihood of success on the merits and irreparable injury alone warrants preliminary injunctive relief. *GoTo.com*, 202 F.3d at 1209. However, the balance of hardships also tips sharply in Wine Scout's favor.

Garcia has filed for a winegrower license with the dba Bounty Hunter Winery and has begun advertising its Bounty Hunter Winery on the Internet. Gerien Decl., ¶9, Exhs. 10, 11.

DICKENSON, PEATMAN & FOGARTY
*A Professional Law Corporation*

1    Other than this, there is no evidence of any significant investment in the BOUNTY HUNTER

2    mark by Garcia or that Garcia will suffer any hardship if the requested relief is granted.

3         By contrast, Wine Scout has built up its BOUNTY HUNTER brand over 15 years with

4    great success, as reflected by its total sales for 2007 in excess of $15 million.  Pope Decl., ¶2.

5    Wine Scout's BOUNTY HUNTER brand was recently featured by *Wine Spectator*, the nation's

6    premier wine publication, as one of 20 up and coming Cabernet Sauvignon producers.  Pope

7    Decl., ¶16, Exh. 22.   Wine Scout is at the top of its game with a great deal to lose should

8    Defendant be allowed to proceed with its use of Wine Scout's valuable BOUNTY HUNTER

9    mark.

10        Thus, the balance of hardships also favors Wine Scout and under either standard the Court

11   should issue the requested preliminary injunction.

12   **IV.    BOND**

13        As Garcia has not produced any product under the BOUNTY HUNTER brand and has

14   only initiated advertising for the brand, Garcia will not suffer any financial damage warranting

15   the issuance of a bond should the requested relief be granted to Wine Scout.

16   **V.    CONCLUSION**

17        For all the foregoing reasons, Plaintiff respectfully request that the Court grant the

18   requested preliminary injunctive relief enjoining Defendant Garcia, as well as any producers or

19   distributors, from producing, selling, offering for sale, advertising, promoting or shipping any

20   wine with the mark BOUNTY HUNTER, or using the term "Bounty Hunter," or any other terms

21   confusingly similar thereto, as part of any trade name for a winery, vineyard or other business

22   operating in the wine industry.

23   //

24   //

25   //

26   //

27   //

//

Dated: 3/14/08

1

2          Respectfully submitted,

3          DICKENSON, PEATMAN & FOGARTY

4

5          By _____
              J. Scott Gerien

6              Megan Ferrigan Healy

7              809 Coombs Street
8              Napa, California  94559
               Telephone: 707-252-7122
               Facsimile: 707-255-6876
9

10         Attorneys for Plaintiff,
           Wine Scout International

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27



J. SCOTT GERIEN, State Bar No. 184728
MEGAN FERRIGAN HEALY, State Bar No. 229177
DICKENSON, PEATMAN & FOGARTY
809 Coombs Street
Napa, California 94559
Telephone: (707) 252-7122
Facsimile: (707) 255-6876

Attorneys for Plaintiff
WINE SCOUT INTERNATIONAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wine Scout International,<br><br>    Plaintiff,<br><br>vs.<br><br>Garcia Family Vineyards, Inc.<br><br>    Defendant. | CASE NO. CV 08-00858 JF<br><br>[PROPOSED] PRELIMINARY INJUNCTION |

The Plaintiff's Motion for Preliminary Injunction came on for hearing before this Court on April 11, 2008, all parties appearing through their respective counsel of record.

Having considered the papers submitted by the parties and the arguments of counsel, and good cause appearing for the reasons set forth below, Plaintiff's Motion for Preliminary Injunction is GRANTED.

The Court finds that the Plaintiff has demonstrated a strong probability of success on the merits by virtue of showing that Defendant is engaged in the advertisement of wine under a trademark that likely infringes Plaintiff's BOUNTY HUNTER mark and that Defendant will proceed to carry on such infringing acts unless immediately enjoined by this Court.

The Court finds that Plaintiff has presented sufficient evidence to show that:

1     a)     Plaintiff is likely to prevail on the merits of its action showing that Defendant will

2     infringe Plaintiff's trademark;

3     b)     Defendant's actions have caused and will continue to cause immediate and

4     irreparable harm to Plaintiff, for which monetary compensation will not afford adequate relief;

5     and,

6     c)     The balance of hardships favors the Plaintiff.

7

8     IT IS HEREBY ORDERED that, pending trial in this matter:

9     1.     Defendant, Garcia Family Vineyards, Inc., its agents, officers, directors,

10    employees and others affiliated with it, including its producers and distributors, shall immediately

11    cease producing, distributing, offering for sale, selling, advertising or promoting any wine or

12    winery bearing the name or mark BOUNTY HUNTER, or any name, mark or logo confusingly

13    similar to Plaintiff's BOUNTY HUNTER mark.

14    2.     Defendant, Garcia Family Vineyards, Inc., shall serve a copy of this order on any

15    distributors of its BOUNTY HUNTER wine informing them that they are ordered by this court to

16    immediately cease distributing, offering for sale, selling, advertising or promoting any wine

17    bearing the name or mark BOUNTY HUNTER, or any name, mark or logo confusingly similar to

18    Plaintiff's BOUNTY HUNTER mark.

19

20    IT IS SO ORDERED

21

22    Dated:_____          By: _____

23                                                                    United States District Court Judge

24

25

26

27