John W. Villines (CA SBN 193672)
JV LAW
726 14th Street, Suite E
Modesto, CA 95354
*Mailing Address*:
P.O. Box 580049
Modesto, CA 95358-0002
Tel: (209) 524-9903
Fax: (209) 524-6655
E-Mail: john@jvlaw.net

Attorneys for Defendant GARCIA
FAMILY VINEYARDS, INC., d/b/a
BOUNTY HUNTER WINES

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| WINE SCOUT INTERNATIONAL, d/b/a BOUNTY HUNTER, <br><br> Plaintiff, <br><br> vs. <br><br> GARCIA FAMILY VINEYARDS, INC., d/b/a BOUNTY HUNTER WINES, <br><br> Defendant. | Case No.: C 08-00858 JF <br><br> **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS & AUTHORITIES** <br><br> Date:  April 18, 2008 <br> Time:  9:00 a.m. <br> Room:  3 |

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65 and Civil Local Rules 7-3(a) and 65-2, Defendant GARCIA FAMILY VINEYARDS, INC., d/b/a BOUNTY HUNTER WINES (hereinafter "Garcia" or "Defendant") hereby opposes Plaintiff Wine Scout's motion for preliminary injunctive relief against Garcia from producing, selling, offering for sale, advertising or shipping any wine using the mark "Bounty Hunter" pending a trial on the merits.

This Opposition is based on Garcia's Memorandum of Points and Authorities, and the

-1-

attached Declarations of Mark Garcia and attorney John W. Villines.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND STATEMENT OF ISSUES.

The Defendant owns a vineyard and produces wine. After being approved by the TTB to use "Bounty Hunter" as a wine name on its labels, Plaintiff has sued Defendant for trademark infringement, despite the fact that Defendant does not produce wine under the "Bounty Hunter" moniker.

This Court must decide if a preliminary injunction should be granted due to the likelihood of confusion by the public between Plaintiff's services and Defendant's products, and if so, the amount of security that is proper to be posted by Plaintiff, the moving party.

### II. BRIEF STATEMENT OF RELEVANT FACTS.

In 2000, Mark and Angela Garcia, the principals of Defendant Garcia Family Vineyards, Inc., entered into the winemaking business. Mark and Angela Garcia are also the owners of Garcia Bail Bonds, which services the entire state of California (www.BailBondGirl.com). Declaration of Mark Garcia in Opposition to Motion for Preliminary Injunction ("Garcia Decl."), ¶4. The Garcia family has been involved in the bail bond industry for over 12 years, and they have built up goodwill and consumer recognition in the industry throughout the state (Angela Garcia is "Bail Bond Girl," the recipient of a federal decree of secondary meaning). Garcia Decl., ¶4.

In 1999, the Garcia family purchased real estate in Oakdale, California, for the purpose of planting a wine grape vineyard. In 2000, the Garcias planted their wine grape vineyard, which yielded its first usable crop in 2005. Garcia Decl., ¶ 2. At that time, the Garcia family produced its first vintage. Garcia Decl., ¶2.

Due to their primary occupation as "bounty hunters," the Garcia family wanted to create a wine brand that capitalized on the goodwill already associated with the Garcia family name in the bail bonds and legal industry. Accordingly, in 2006, Garcia hired an independent design firm, LeBlanc Design, located in Calistoga, California, to develop the wine labels and brand name of the wine Garcia would be producing. This independent design firm generated the brand name "Bounty Hunter" and designed the wine labels. Garcia Decl., ¶6.

After receipt of the design firm's suggested brand name "Bounty Hunter," Garcia investigated the brand names of existing wines and approved wine labels approved by the U.S. Alcohol Tobacco Tax and Trade Bureau (TTB) and the California Department of Alcoholic Beverage Control (ABC). At that time, there were no approved wine names or labels using "Bounty Hunter," and Garcia was not aware of Plaintiff's existence or services. Garcia Decl., ¶¶7, 9.

On October 3, 2007, the TTB issued a Certificate of Label Approval (COLA) for the wine brand "Bounty Hunter." Garcia Decl., ¶8.

On several occasions in late 2007 and early 2008, Mark Pope contacted Mark Garcia via telephone to discuss Garcia's use of "Bounty Hunter" as a wine brand name. Mark Garcia explained to Mr. Pope that he did not consider the parties as competitors since Plaintiff does not use the name "Bounty Hunter" in connection with any wines it produces. Garcia Decl., ¶10.

Mark Garcia did suggest that the parties could do some joint marketing or Garcia could add disclaimer language to its wine label to distinguish the two companies, but Mr. Pope refused to entertain any further discussions and resolve this matter amicably. Garcia Decl., ¶10.

On or about January 10, 2008, Garcia submitted an application to ABC for a Type-02 Winegrower License utilizing the "dba" "Bounty Hunter Wines." Garcia Decl., ¶11.

To date, Garcia has expended approximately $40,000 in costs for brand research, label design, labeling wine bottles, legal applications, website design, advertisement, marketing, and promotional materials, and production and distribution expenses. Garcia Decl., ¶12.

/ / /

/ / /

**III.   LEGAL ARGUMENT.**

A preliminary injunction is an equitable remedy that is most often the exception rather than the rule, and is "never issued as a matter of course." *LegalSource, Inc. v. Source Services Corp.,* 31 U.S.P.Q.2d (BNA), 1220, 1221, 1994 WL 649775 (CD.Cal. 1994).

**A.   PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS.**

Despite the great legal rhetoric put forth by Wine Scout and its attorneys, Plaintiff cannot meet its burden to establish that it has a valid, protectable mark in connection with wine production, and that Garcia's TTB-approved use of the Bounty Hunter brand wine labels is likely to cause confusion, mistake, or deception under the standards set forth in the Lanham Act and case law.

**1.   Plaintiff's Federally Registered Service Mark is Limited to Services.**

Plaintiff rightly points out that its federally registered service mark is presumed to be distinctive. Yet, as acknowledged by Plaintiff Wine Scout in its own brief and Mr. Gerien's Declaration, Plaintiff's "Bounty Hunter®" service mark, U.S. Registration No. 2,311,360, ***is not for wine production***.

Instead, Wine Scout's registered service mark is for International Class 35, which applies to services and not goods or products. In its application, Wine Scout described the purpose of the mark as for "retail and mail order catalog services featuring wines, speciality [sic] and gourmet foods, cigars and wine related accessories." Declaration of J. Scott Gerien in Support of Motion for Preliminary Injunction ("Gerien Decl."), ¶2, Exhibits 1&2. Thus, this service mark was not sought out by Wine Scout to protect its wine production (something it was not doing in 1994 by its own admission), but was to protect its mail order business.

The whole purpose of the trademark classification system is so that one's use of a trade

-4-

name or service mark will not preclude use in an entirely different industry.  Thus, *Dog the Bounty Hunter*® is a registered mark (IC 41 – Entertainment Services, Reg. No. 3015589), as is *Bounty Hunter* (IC 35 - Clothing, Reg. No. 2690997), and *Bounty Hunter* (IC 28 – Fishing Lures, Reg. No. 2509689), none of which are registered to Wine Scout.

What is the purpose of the Bounty Hunter mark?  If you carefully review the voluminous exhibits submitted by Plaintiff for this motion, you will see that the name "Bounty Hunter" is used by Wine Scout for its mail order catalog, its online catalog and website, its Napa restaurant and wine bar, and for Mark Pope himself, the CEO of Wine Scout.  However, the brand name *Bounty Hunter* is conspicuously missing from any actual wine that Wine Scout produces.

Although Wine Scout has a registered service mark for its retail and mail order catalog, it does not have a registered trademark for the wine it produces.  Although it has filed an application with the USPTO, this application was only filed after Garcia, through its counsel, pointed out Wine Scout's failure to secure a trademark for wine production.  Gerien Decl., ¶¶7-8, Exhibits 7&8.  In addition, this application has not been submitted for publication yet, which will allow Garcia to vigorously oppose the trademark registration.  Gerien Decl., ¶8, Exhibits 8&9.

In fact, as set forth in the Declaration of John W. Villines in Opposition to the Motion for Preliminary Injunction, and its attached exhibits, Wine Scout's TTB labels and ABC licenses show that it does not use the "Bounty Hunter" name in connection with any wine it produces.

Wine Scout has not used the "Bounty Hunter" mark in connection with its wine for any length of time or with any continuity, and its federally registered service mark does not cover wine production.  Accordingly, Wine Scout does not have a valid, protectable mark that would preclude Garcia from using the "Bounty Hunter" wine brand and labels.

/ / /

-5-

### 2. Defendant's Use of "Bounty Hunter" for Wine is NOT Likely to Cause Confusion, Mistake, or Deception.

Plaintiff's legal analysis hinges around the *Sleekcraft* factors for the likelihood of confusion. See *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979). Review of these factors in the aggregate, however, does not lead to the inevitable conclusion that a preliminary injunction is warranted. In fact, the status quo should be preserved until this matter is finally adjudicated on its merits.

As referred to above, Wine Scout's use of its mark is for services, not actual wine production. Wine Scout's use of the term *Bounty Hunter* refers to Mr. Pope and his self-proclaimed ability to "capture rare wines" for the savvy wine connoisseur, but it has not been used to refer to the wine itself. Garcia does not compete with Wine Scout – Garcia does not specialize (or even dabble) in gourmet foods, cigars, or mail order catalogs.

Although Wine Scout makes much of its media exposure, a careful review of the exhibits produced by Wine Scout reveal that most of this exposure is about Plaintiff's online retail sales, the ambiance of Plaintiff's restaurant, or Mr. Pope's vision for "tracking down the hottest wines and luxury items. . . ." Even when the media highlights "Bounty Hunter" wines, these descriptions are inaccurate as they do not align with Plaintiff's own catalog descriptions, the wine labels, or the TTB's COLAs.

Next Wine Scout states that the typical wine consumer would be confused by Garcia's labeling of its wine, stating that wine is an impulse product. Yet Wine Scout does not market to the typical wine consumer, and therefore the typical wine consumer would not be confused by Garcia's wine brands. In fact, Wine Scout's exhibits make it clear that their target audience is the savvy, *purposeful* consumer. Wine Scout offers a retail catalog, an online store of rare

-6-

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - C 08-00858 JF

wines, and a wine club.  These offerings are not typical of "impulse" purchases, but rather intentional, purposeful purchases by wine lovers.  The mere consumer has neither need nor knowledge for Wine Scout or its services.  The housewife who purchases wine at the local supermarket, or the college student who purchases wine at the corner liquor store as a last minute decision for a first date – these consumers will not likely to be confused by Garcia's wine label because, sadly, they have never heard of Mark Pope, *aka* the Bounty Hunter.  The only bounty hunter they will know is Steve McQueen (then again, maybe not the college student).

Although Plaintiff's brief and Mr. Pope's Declaration attempt to paint a "down home" restaurant setting, Plaintiff's exhibits belie this view.  The media articles on Wine Scout and its store and restaurant all clearly point to the fact that Wine Scout's services cater to a distinct and elite audience of wine lovers.  This elite audience  Wine Scout's marketing efforts are not geared to the typical wine consumer with "little knowledge" of wine, so it easily follows that such folk would not be easily confused.  Since the common man has little if any knowledge of Wine Scout, and the sophisticated wine lovers would not easily be mistaken as to the source of the wine, injunctive relief is not necessary at this time.

Finally, Wine Scout's inferences about Garcia's intent are wrong.  Garcia conducted a search of all TTB approved wine labels and ABC wine grower licenses, and the "Bounty Hunter" was absent. Garcia Decl., ¶7.  Garcia also hired an independent design firm, LeBlanc Design, to develop the wine labels and brand name.  Garcia Decl., ¶6.  At the time, Garcia had never heard of Plaintiff.  Garcia Decl., ¶9.  Thus, the intent factor tips in favor of Defendant Garcia, not Plaintiff.

For these reasons, the preliminary injunction should not be issued.

/ / /

-7-

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - C 08-00858 JF

### B.   IF THE PRELIMINARY INJUNCTION IS GRANTED, PLAINTIFF MUST POST SECURITY.

Wine Scout states, without any evidence, that Defendant has not produced any product and will therefore not suffer any financial damage warranting the issuance of a bond.

Yet contrary to Plaintiff's argument dismissing the bond requirement, Fed. Rule of Civ. Proc. 65(c) is explicit, stating that a preliminary injunction cannot be issued "except upon the giving of security by the applicant … ."  F.R.C.P. 65(c).

The purpose of the bond is to compensate the enjoined party in the event that it is found after a trial on the merits that the injunction was wrongfully granted. *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1036 (9th Cir. 1994).

Garcia will suffer substantial financial damage if the injunction is issued.  Garcia has already incurred marketing and branding costs of approximately $40,000 to develop the wine labels and brand name.  Garcia Decl., ¶12.  Garcia already has a 2006 vintage ready to be distributed that would be delayed until new labels and a new brand name could be created. Garcia Decl., ¶14.  Such a delay would cost Garcia lost revenues of $100,000, and would also affect Garcia's 2007 vintage as well.  Garcia Decl., ¶14.  Additionally, the costs of re-creating a new and alternate brand and wine labels would cost another estimated $40,000.

Therefore, it is reasonable to require Wine Scout to post security of at least $200,000 to cover Garcia's damages caused by the injunction.

### C.   CONCLUSION.

For all the foregoing reasons, Defendant Garcia respectfully requests that the Court refuse to grant the motion of preliminary injunctive relief.  In the alternative, if the Court does grant injunctive relief, Defendant Garcia respectfully requests that the Court grants such relief

only upon the posting of a $200,000.00 bond, or a bond in an amount the Court determines is proper pursuant to Rule 65(c).

DATED: March 28, 2008.                    JV LAW


                                          By: __/s/ JOHN W. VILLINES_____
                                              John W. Villines
                                              Attorneys for Defendant GARCIA
                                              FAMILY VINEYARDS, INC., d/b/a/
                                              BOUNTY HUNTER WINES