J. SCOTT GERIEN, State Bar No. 184728
MEGAN FERRIGAN HEALY, State Bar No. 229177
DICKENSON, PEATMAN & FOGARTY
809 Coombs Street
Napa, California 94559
Telephone: (707) 252-7122
Facsimile: (707) 255-6876

Attorneys for Plaintiff
WINE SCOUT INTERNATIONAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wine Scout International,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Garcia Family Vineyards, Inc.<br><br>　　　　Defendant. | CASE NO. CV 08-00858 JF<br><br>WINE SCOUT INTERNATIONAL'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION<br><br>DATE:　　APRIL 18, 2008<br>TIME:　　9:00 A.M.<br>DEPT:　　ROOM 3 |

**INTRODUCTION**

Defendant Garcia Family Vineyards, Inc. ("Defendant" or "Garcia") has submitted an opposition brief against Plaintiff Wine Scout's Motion for Preliminary Injunction so lacking in substance or legal vigor as to be accorded virtually no weight. The opposition is rife with conclusory statements, references to a declaration of counsel that does not exist, flippant asides, and blanket mischaracterizations of established principles of trademark law for which Defendant has provided the Court absolutely no legal support. At the same time, Defendant's opposition fails to raise any additional issues not fully discussed in Plaintiff's Memorandum of Points and

Authorities submitted in connection with its Motion for Preliminary Injunction. These numerous shortcomings only serve to highlight Plaintiff Wine Scout's strong likelihood of success in prevailing on the merits of its trademark infringement action and thus, the necessity for injunctive relief to be granted in this matter.

While systematically exposing every flaw of Defendant's brief would serve in large part only as a recitation of the many legal standards of which the Court is already aware, Wine Scout would like to address some of the more significant failures in Defendant's argument.

## ARGUMENT

**1.  Defendant's Receipt of a Certificate of Label Approval from the TTB for Wine Labels Bearing the BOUNTY HUNTER Trademark is Irrelevant.**

Throughout this dispute, Defendant has made much of the fact that the Alcohol and Tobacco Tax and Trade Bureau (TTB) (formerly known as the Bureau of Alcohol, Tobacco and Firearms (ATF)) issued a Certificate of Label Approval (COLA) to Defendant for wine bearing the brand BOUNTY HUNTER, and Defendant has attempted to claim that this approval somehow confers trademark rights upon it for the mark. It does not. The TTB makes absolutely no trademark evaluation of the alcohol beverage labels it approves for use, a fact which counsel for Wine Scout already pointed out to Defendant prior to the institution of this action.

A COLA is a statutorily mandated tool used to help the TTB enforce the labeling requirements of the Federal Alcohol Administration Act and its sole purpose is to authorize the bottling and removal of alcoholic beverages from the bonded area where they were bottled or packed prior to being released for sale. Declaration of Megan F. Healy in Support of Wine Scout's Reply to Opposition ("Healy Decl."), ¶ 2, Exh. 1. In fact, the instructions provided by the TTB in connection with the COLA application specifically state in the first section "NOTE: This certificate does not constitute trademark protection." Healy Decl., ¶ 2, Exh. 1. The TTB's Notices and Industry Circulars have reiterated this fact for decades, stating as early as 1986 that

"[i]t should be stressed that the issuance of a certificate of label approval by ATF in no way constitutes trademark protection for the label" and in 1998 that "[t]he certificate of label approval was never intended to convey any type of proprietary interest to the certificate holder. On the contrary, Paragraph 5100.31 provides that 'This certificate is issued for ATF use only. This certificate does not constitute trademark protection.'" Healy Decl., ¶3-¶4, Exhs. 2-3. Clearly, that the TTB approved Defendant's infringing BOUNTY HUNTER wine label offers no basis for a claim of trademark rights in the mark.

2. **Wine Scout Owns a Valid and Protectable Mark for BOUNTY HUNTER in the Wine Sector, Including for Wine.**

Defendant has asserted that Wine Scout does not own a trademark for the mark BOUNTY HUNTER for wine. This is not the case. Contrary to Defendant's assertions, Wine Scout's BOUNTY HUNTER brand is more than just a single mark for a single product; it is an overarching umbrella under which a multitude of wine-oriented products and services are offered, including wines, a wine bar, a restaurant, retail services, an internet website, and a mail order catalog. This BOUNTY HUNTER family of wine-centric goods and services entitles Wine Scout to protection from infringers attempting to enter virtually any segment of the wine industry with a confusingly similar mark, and most certainly protection from an infringer attempting to introduce a BOUNTY HUNTER wine.

In addition to its incontestable service mark rights in the mark BOUNTY HUNTER for various wine-related services evidenced by U.S. Trademark Registration No. 2,311,360, Wine Scout has also been using its BOUNTY HUNTER mark in association with wine since as early as 1999. *See* Declaration of Mark Pope in Support of Motion for Preliminary Injunction ("Pope Decl."), ¶8-¶9. As Professor McCarthy explains, "it is...only actual use of a designation as a mark which creates right and priority over others." 4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (2003), §16.1; *see also Sinhdarella, Inc. v. Vu*, 85 USPQ2d 2007, (N.D.Cal.

2008). On the basis of this prior use, Wine Scout applied for trademark protection for the mark BOUNTY HUNTER for wine (U.S. Application Serial No. 77/326413). This application has been examined by the USPTO and has been determined to be eligible for registration, as evidenced by the approval of such mark for publication on March 1, 2008. Healy Decl., ¶ 5, <u>Exh. 4</u>. Therefore, Wine Scout has valid and protectable common law rights in the mark BOUNTY HUNTER for wine which predate any first use date upon which Defendant can rely.

3. **The USPTO's International Classification of Wine Scout's Services And Third Party Users of BOUNTY HUNTER Mark Are Irrelevant.**

Wine Scout's federally registered BOUNTY HUNTER mark is for wine-related retail and mail order catalog services, services which the USPTO has classified in International Class 35. In a sweeping statement, Defendant attempts to educate the Court on the "purpose" of the USPTO's classification system, asserting without any legal authority that the purpose of placing goods and services in various classes "is that so one's use of a trade name or service mark will not preclude use in an entirely different industry." Defendant's Opposition to Motion for Preliminary Injunction ("Defendant's Opposition"), p. 4-5. Such unsupported statements expose Defendant's precarious position in this matter and its general unfamiliarity with trademark law. The USPTO's classification system is for organizational purposes and is not meant to be, or used as, a mechanism for determining whether goods and services are related or not. As the Trademark Trial and Appeal Board recently stated,

> "To the extent...that...applicant may be of the view that confusion is unlikely because the respective goods are in different classes, suffice it to say that the purpose of the United States Patent and Trademark Office in using the classification system is for administrative convenience rather than as an indication of whether goods or related or not. The fact, therefore, that applicant's goods in International Class 2 and those of the registrant in International Class 4 are classified in different classes is not an indication that such goods are unrelated; instead that fact is *simply immaterial* in determining the issue of likelihood of confusion."

*In re WD-40 Manufacturing Company*, 2007 WL 2698297, *2 (TTAB 2007) (emphasis

added) (citations omitted). Therefore, the International Classification of Wine Scout's BOUNTY HUNTER service mark is irrelevant and certainly offers no basis for a claim that the parties' goods and services are unrelated.

Similarly, Defendant's references to other "BOUNTY HUNTER" marks on the USPTO's Principal Register, including DOG THE BOUNTY HUNTER for entertainment services and BOUNTY HUNTER registrations for clothing and fishing lures, are also immaterial to the question of trademark infringement at issue here, as those products and services are wholly unrelated to Wine Scout's BOUNTY HUNTER wine, restaurant, wine retail, and mail order catalog services. As the Ninth Circuit has instructed, "evidence of the use of a mark by third parties on wholly unrelated products is of little or no probative value…and cannot dilute [a party's] right to its name." *American Scientific Chemical, Inc. v. American Hospital Supply Corp.*, 690 F.2d 791, 794 (9th Cir. 1982); *see also Eclipse Associates Limited v. Data General Corporation*, 894 F.2d 1114, 1119 (9th Cir. 1990) ("Evidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law."). Thus, the fact that there are co-existing, non-competing users of the BOUNTY HUNTER mark in various fields, as is the case with many well-known brands, does nothing to detract from Wine Scout's ability to protect its mark from infringement by Defendant in both identical and directly competitive segments of the market.

4. **The "Typical Wine Consumer" Includes Both the Knowledgeable and the Neophyte.**

Defendant has attempted to segregate the parties' consumers by asserting that Wine Scout does not offer its BOUNTY HUNTER wines and wine services to the "typical wine consumer," but rather only "elite" wine lovers. In this District, the customer care standard in an infringement action relating to wine is the typical buyer exercising ordinary caution and "[a]lthough this standard may exclude the wholly indifferent, it includes the ignorant and the credulous."

*Vigneron Partners, LLC v. Woop Woop Wines Pty Ltd.*, 2006 WL 1214859, *6 (N.D.Cal. 2006) (citations omitted); *see Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599, *11 (N.D. Cal. 2005) ("[T]here is little doubt that wine purchasers typically fall into the [] category of unsophisticated 'impulse' buyers."); *see also Alfacell Corp. v. Anticancer Inc.*, 2004 WL 1631116 (C.D.Cal. 2004) ("where both professionals and the general public are relevant consumers, 'the standard of care to be exercised...will be equal to the least sophisticated consumer in the class.'"). Thus, Defendant's arguments regarding the degree of care taken by wine consumers are not well founded.

Moreover, contrary to Defendant's assertions, Wine Scout caters to all ends of the consumer spectrum with its BOUNTY HUNTER wine, restaurant, wine bar, website, retail store, and catalog. The wines sold under Wine Scout's BOUNTY HUNTER mark are specifically chosen to be available at many different price levels, from the affordable to the luxurious, and accessible to a broad range of consumers, from the novice to the educated, and care has been taken to cultivate a warm, non-intimidating atmosphere at the BOUNTY HUNTER retail and restaurant location. *See* Declaration of Mark Pope in Support of Motion for Preliminary Injunction ("Pope Decl."), Exhs. 20-3, 20-11, 20-12 (third party descriptions of the BOUNTY HUNTER wine bar and retail location as "casual," with a "nice lack of pretension."). As a result, Wine Scout's BOUNTY HUNTER brand wine and wine services attract and serve a wide array of wine consumers. Conversely, Garcia's BOUNTY HUNTER California appellation wine appears to be aimed squarely at the lower end of the wine market, given the low price point of California appellation wines and Defendant's intended markets of "supermarket[s]," "college student[s]," and "corner liquor store[s]." Defendant's Opposition, p. 7. This fact only serves to enhance the likelihood of consumer confusion between the two BOUNTY HUNTER brands at issue here, as it is not unusual for producers or sellers of higher end goods to produce or offer lower-priced goods

as a second tier product or a line extension. *Palm Bay Imports, Inc. v. Veuve Clicquot*, 396 F.3d 1369, 1376 (Fed. Cir. 2005) (finding confusion between champagne and sparkling wine as even more sophisticated purchasers might assume market expansion into the lower-priced segment of the market). Therefore, there is no legal or evidentiary support for Defendant's attempt to improperly narrow the consumer base of the parties' goods and services.

5. **Defendant's Willful Ignorance Demonstrates Its Bad Faith.**

Defendant's claims of innocence and ignorance of Wine Scout and its BOUNTY HUNTER brand wines and wine services are not believable. Garcia had a multitude of opportunities to discover the existence of Wine Scout and its BOUNTY HUNTER brand before adopting its infringing BOUNTY HUNTER wine label. For Garcia to now profess unawareness of Wine Scout's brand until the initial October 2007 demand letter is either a misrepresentation of the facts or, at best, a willful ignorance, neither of which permits an inference of good faith adoption of a mark.

For example, in Defendant's initial response to Wine Scout on November 2, 2007, Defendant claimed that it was "not aware" of Wine Scout's BOUNTY HUNTER retail store and catalog, despite having "extensively researched the existing wines," and then concluded the letter with a self-professed familiarity with the Lanham Act and federal trademark law, stating that Defendant "[had] been successful at federal trademark infringement litigation in the past." See Declaration of Scott Gerien in Support of Motion for Preliminary Injunction ("Gerien Decl."), Exh. 7. However, this extensive research and trademark proficiency apparently did not extend to conducting a trademark clearance search of the USPTO's Principal Register, which would have instantly disclosed the presence of Wine Scout's registered BOUNTY HUNTER mark. Garcia later sheds light on the type of "extensive research" that was conducted, alleging a personal investigation by its principal Mr. Mark Garcia of all TTB approved wine labels and California

Department of Alcoholic Beverage Control (ABC) wine grower licenses. Defendant's Opposition, p. 7. However, the California ABC searchable License Query System (LQS) does not offer a search of "wine grower licenses" – the available selections are "License Number," "Business Address," "Licensee Name," and "Business Name." Healy Decl., ¶ 6, Exh. 5. Selecting any of the first three would be illogical in a trademark clearance search, as one would be without information as to the license number, address, or licensee name of any potential senior users. Searching "BOUNTY HUNTER" under the "Business Name" section, however, would be an appropriate choice and had Garcia actually done so, he would have seen a listing of Wine Scout's nine issued licenses displaying the BOUNTY HUNTER business name. Healy Decl., ¶ 6, Exh. 5. Clearly, for Garcia to remain unaware of Wine Scout's BOUNTY HUNTER brand at that juncture, its alleged search of the California ABC license records must not have included actually searching the California ABC's available license database.

In addition to not conducting a search of the USPTO's registered trademarks and Garcia's dubious claims of a search of the California ABC licenses, Garcia's extensive search also apparently did not include a Google search, a tactic even the most novice of business owners would use to determine the availability of a potential trademark. Had Garcia conducted even this most simple of steps and searched any combination of the terms "bounty hunter" and "wine," the Google search results would have immediately disclosed Wine Scout's BOUNTY HUNTER brand, as the entire first page of any such search returns only references to Wine Scout's brand. Healy Decl., ¶ 7, Exh. 6. In fact, even a search of the phrase "bounty hunter" alone returns a link to Wine Scout's BOUNTY HUNTER website as the second hit. Healy Decl., ¶ 7, Exh. 6.

That Defendant continues to assert it had never heard of Wine Scout and its BOUNTY HUNTER mark and that its adoption of the identical mark for wine was done in complete innocence, while at the same time touting its comprehensive search and familiarity with

trademark law, is simply not credible under the facts. At best, this represents a "head in the sand" approach which Garcia appears to have carried over into this litigation as evidenced by its briefing, which spouts unsupported and indignant mischaracterizations about the matter while at same time apparently staying willfully ignorant of the legion of case law in support of Plaintiff's position.

### 6. There is No Support for Garcia's $200,000 Bond Request.

Defendant has not yet made any sales of its infringing BOUNTY HUNTER wine and has offered no support for its claims of security in the amount of $200,000. To determine the amount of a bond, it is proper to look to evidence regarding the potential financial harm to the Defendant of issuing a preliminary injunction. *See Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.2003); *Walczak v. EPL, Prolong, Inc.*, 198 F.3d 725, 733-34 (9th Cir.1999). This injunction will not prohibit Defendant from producing and selling wine in general; it will only prevent the production and sale of wine under the infringing BOUNTY HUNTER mark. As Garcia has not yet labeled its wine, it is free to choose a new, non-infringing name and brand. As to any costs incurred by Garcia in developing the BOUNTY HUNTER brand, these are not the proper subject of a bond. If Garcia wins at trial, it will be free to enjoy the use of the label design and reap the benefits of the investment in such design. The only legitimate cost that may be claimed by Defendant in a bond is the cost for a new label design. However, the unsupported figure of $40,000 proposed by Defendant is excessive and unrealistic. A more appropriate figure for label design costs would be $5,000. The suitability of this $5,000 amount is supported by evidence that Wine Scout itself has recently incurred wine label design costs in the amount of $5,000 per wine label from a well-known wine label design firm, as well as by Wine Scout's recent telephone call to LeBlanc Design, the design firm which is alleged to have developed Defendant's BOUNTY HUNTER wine label, in which LeBlanc

Design indicated that its costs for a complete label design are typically around $5,000 per wine label, but can be as low as $3,000 per label. Declaration of Julie Koetzner in Support of Wine Scout's Reply to Opposition, ¶2-¶3, Exh. 1. Thus, Wine Scout proposes a bond in the amount of $5,000.

## CONCLUSION

Wine Scout has demonstrated its strong likelihood of success in proving that consumer confusion is likely between Defendant's BOUNTY HUNTER wine and Wine Scout's BOUNTY HUNTER brand for wine and wine services under every relevant measure of the eight factor *Sleekcraft* test. The evidence of record demonstrates that the marks are identical, the parties' goods and services are both identical and highly related and will travel in overlapping marketing channels where they will be encountered by all types of wine consumers, that Wine Scout's BOUNTY HUNTER mark is strong and entitled to a wide scope of protection, and that Defendant selected its infringing mark in bad faith. Defendant's inability to present facts and arguments of substance countering any of the *Sleekcraft* factors weighing in favor of a finding of likely confusion underscores the overwhelming evidence and legal bases favoring Wine Scout and its entitlement to injunctive relief.

In light of the foregoing, Wine Scout respectfully request that the Court grant its Motion for Preliminary Injunction and institute the requested relief.

Respectfully submitted,

DICKENSON, PEATMAN & FOGARTY

Dated: 4/4/08

By: _____
J. Scott Gerien
Megan Ferrigan Healy
809 Coombs Street
Napa, California 94559

Attorneys for Plaintiff,
Wine Scout International